UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TONY PHILLIP ROGERS,

        Plaintiff,

v.                                                                            Case No. 17-C-446

PAUL KEMPER,

        Defendant.

## DECISION AND ORDER DENYING PETITION
## FOR RELIEF UNDER 28 U.S.C. § 2254

Tony Phillip Rogers filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. Rogers was convicted in Milwaukee County Circuit Court on four counts of first degree sexual assault of a child under thirteen and one count of incest with a child. He was sentenced to a total of 25 years of initial confinement followed by 15 years of extended supervision. The court screened the petition on April 4, 2017 and allowed Rogers to proceed on two claims: (1) ineffective assistance of counsel based on his attorney's failure to obtain the victim's mental health records, or at least file a motion for an in camera review; and, (2) the trial court erred when it denied his request to introduce other acts evidence at trial in an attempt to show prior fabrication by the victim. The issues presented here were already well-developed in the state court proceedings. Based on the court's review of the petition, answer and exhibits attached thereto, I conclude that further briefing is unnecessary and will proceed to decide the case on the record before me. For the reasons discussed herein, the petition will be denied and the case dismissed.

**BACKGROUND**

Rogers was convicted of repeatedly sexually assaulting his daughter, DAR, between 2005 and 2010, when she was between the ages of eight and twelve. DAR reported the criminal conduct in a letter written to her mother in 2012. In her letter, DAR also mentioned having suicidal thoughts, feeling overwhelmed, and hearing voices. Prior to trial, the state filed a motion in limine seeking to prevent counsel for Rogers from offering evidence that DAR was diagnosed with and received inpatient treatment for a mental illness. Roger's attorney opposed the motion noting that his investigator had learned that DAR had been hospitalized and diagnosed with Schizophrenia. The prosecutor, on the other hand, claimed that DAR's mother had informed her DAR's diagnosis was depression, which she contended was not surprising given what her father had done to her. ECF No. 10-10 at 5–7. The trial court granted the State's motion on the ground that since neither party intended to call as a witness a psychologist or other expert qualified to testify on mental health diagnosis and treatment, there was no foundation for such testimony. ECF No. 10-11 at 2–7.

This did not leave the defense without any basis on which to challenge DAR's credibility, however. The trial court held that the defense was free to explore DAR's conduct through cross examination of her and her mother concerning the letter she had written, hearing voices, suicidal thoughts and acting out behavior. *Id.* at 6–7. At trial, the State relied on DAR's letter to her mother, as well as testimony from DAR, her mother, her friend, and a police officer. Rogers, through cross-examination and testimony from one of DAR's friends, challenged the allegations as not credible given DAR's statement that she heard voices, her mental state, and her proclivity to lie. After a three-day trial, the jury returned a guilty verdict on all five counts.

Rogers filed a motion for postconviction relief in state circuit court, alleging his trial counsel was ineffective for failing to obtain the victim's mental health records, or at least move for in camera review. He also claimed the trial court erred in denying his request to admit other acts evidence and his motion for mistrial on the ground that his jail wristband was visible to the jury. The circuit court denied relief and Rogers appealed. The Wisconsin Court of Appeals rejected Rogers' arguments and affirmed the judgment. The Wisconsin Supreme Court denied Rogers' petition for review.

## LEGAL STANDARD

Rogers' petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established Federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal citation and quotation marks omitted). The standard of review for factual findings is similarly deferential. Factual determinations by state courts are presumed to be correct, a presumption that can only be overcome by clear and convincing evidence presented by the petitioner. 28 U.S.C. § 2254(e)(1).

**ANALYSIS**

**A. Ineffective Assistance of Counsel**

Rogers' first argues that his trial counsel was ineffective. Ineffective assistance of counsel deprives a defendant of his Sixth Amendment right to counsel and is therefore a proper ground for relief under 28 U.S.C. § 2254. To establish ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's errors affected the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Judicial scrutiny of counsel's performance under the standard created by *Strickland* is "highly deferential." *Id.* at 689. Adding AEDPA's additional deferential standard results in a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013). When § 2254(d) applies, rather than merely determining whether counsel's actions were reasonable, the court must determine "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562

4

U.S. at 105. As such, rather than showing that "he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," a habeas petitioner must show that the state court applied *Strickland* in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698–99 (2002).

Rogers argues that his trial counsel was ineffective for failing to obtain the victim's mental health records, or at the very least for failing to file a motion to allow for an in camera review of the victim's medical records. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), is the relevant Supreme Court case that addresses the standard for an in camera review of otherwise privileged records. *Dietrich v. Smith*, 701 F.3d 1192, 1194 (7th Cir. 2012). In *Ritchie*, the Supreme Court held that in order for a defendant to obtain an in camera review of privileged records, "'[h]e must at least make some plausible showing of how [the records] would have been both material and favorable to his defense.'" *Id.* at 58 n. 15. (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867 (1982)).

In rejecting Rogers' claim of ineffective assistance of counsel, the Wisconsin Court of Appeals noted that "Rogers was permitted to cross examine the victim on hearing voices and any of the matters she reveals in the letter to her mother." ECF No. 10-6 at 8. Thus, the court concluded, "the victim's mental state was before the jury." *Id.* More fundamentally, the court held that counsel was not ineffective in failing to seek an in camera review of the records because Rogers could not make the preliminary showing of materiality of the records that the Wisconsin appellate court had held was required under *State v. Shiffra*, 175 Wis. 2d 600, 608–09, 499 N.W. 2d 719 (Ct. App. 1993), and *State v. Green*, 2002 WI 68, ¶¶ 32–34, 253 Wis. 2d 356, 646 N.W. 2d 298. Specifically, in *Green* the Wisconsin Supreme Court held that a defendant seeking an in camera review of privileged records was required "to show a reasonable likelihood that the records will be necessary to a determination of guilt or innocence." *Id.*, 253 Wis. 2d 356, ¶ 32. Further explaining,

5

the Court held that "a defendant must set forth a fact-specific evidentiary showing, describing as precisely as possible the information sought from the records and how it is relevant to and supports his or her particular defense." *Id.*, ¶ 33. Applying that standard to Rogers' case, the court of appeals concluded that Rogers fell far short of the threshold requirements:

> At the outset, he fails to set forth "a specific factual basis" that demonstrates that the victim's mental health records will contain "relevant information necessary to a determination of guilt or innocence." . . . Instead, he just speculates. He jumps from the fact that the victim was hospitalized to his speculation that she must have mental health records and that they will show that she suffered "from a mental illness" and that it would be the type of mental illness that would somehow make it "more likely that she had fabricated or misremembered the events" at issue, which would have had a great impact on the jury. However, he offers no "fact-specific evidentiary showing" of relevance. . . . He fails to point to anything in the victim's medical records that would indicate a propensity to lie. He simply links a series of guesses.

ECF No. 10-6 at 9–10 (internal citations omitted). The state court thus concluded that "having failed to set out any facts from which his trial counsel could have successfully made a *Shiffra/Green* motion, Rogers has not shown that trial counsel was deficient or that he was prejudiced by the lack of a motion." *Id.* at 10.

The language used by Wisconsin courts to describe the standard a defendant is required to make in order to obtain an in camera inspection of privileged records is clearly different from the language used by the Supreme Court in *Ritchie*. This does not mean, however, that the Wisconsin court's decision is contrary to clearly established federal law. Just recently, in *Moseley v. Kemper*, the Seventh Circuit again reaffirmed its holding that "the standards do not diverge in any meaningful way and are not 'contrary to' one another in the way that the Supreme Court has defined the phrase." 860 F.3d 1020, 1024 (7th Cir. 2017); *see also Dietrich v. Smith*, 701 F.3d 1192, 1195 (7th Cir. 2012); *Rizzo v. Smith*, 528 F.3d 501, 506 (7th Cir. 2008); *Davis v. Litscher*, 290 F.3d 943,

6

946–48 (7th Cir. 2002). In essences, the Seventh Circuit has concluded that it is not possible to make a "plausible showing" without presenting the court some factual basis for believing that the records contain material and favorable evidence. *Moseley*, 860 F.3d at 1024. Thus, the issue for habeas review becomes whether the state court unreasonably applied this standard in concluding that Rogers was not entitled to relief.

Given the record before it, I cannot say that the Wisconsin Court of Appeals' application of the standard to Rogers' case was unreasonable. Although trial counsel referred to a diagnosis of Schizophrenia in his comments at the pretrial conference, neither then nor at any time thereafter was any evidence offered that such a diagnosis had been made. In contrast, the prosecutor reported that her understanding from the victim's mother is that her daughter unsurprisingly suffered from depression precipitated by the defendant's sexual abuse. Instead of a plausible showing, all Rogers offered, as the state appellate court observed, was speculation: "He jumps from the fact that the victim was hospitalized to his speculation that she must have mental health records and that they will show that she suffered 'from a mental illness' and that it would be the type of mental illness that would somehow make it 'more likely that she had fabricated or misremembered the events' at issue, which would have had a great impact on the jury." ECF No. 10-6 at 9. As the Seventh Circuit noted in *Dietrich*, this is not enough: "The Supreme Court did not intend to require the trial court to undertake a blind fishing expedition through a victim's mental health records for the sole purpose of possibly uncovering additional evidence that may aid in cross-examination, which the defendant has independently and speculatively determined would probably be most effective." 701 F.3d at 1197.

Rogers' argument that DAR's mental health records contained information material to his case that likely would have led to a different result is based primarily on the fact that she reported

7

hearing voices in the letter to her mother where she disclosed the history of abuse. But as the court of appeals noted, the fact that DAR reported hearing voices was before the jury. DAR explained that what she meant be that is that "[i]t was basically like playing on my conscience." ECF No. 10-14 at 35–36. Elaborating further, she testified, "It was basically telling me that everything that went wrong was somehow my fault. Tell me I'm not good enough. Not pretty enough, otherwise what Tony did wouldn't have happened." *Id.* at 36. DAR, who was 16-years-old at the time of the trial, testified in detail about the abuse and the events leading up to her reporting it. The jury had a full opportunity to assess her credibility as she testified in direct, cross, re-direct and re-cross. ECF No. 10-13 at 36–94; 10-14 at 3–43. Rogers offered no reason to believe that information in her mental health records would have undermined her credibility. Under these circumstances, I cannot say the Wisconsin courts application of clearly established federal law was unreasonable. Accordingly, Rogers' petition must be denied as to this claim.

**B. Extrinsic or Other Acts Evidence**

Rogers' also challenges the trial court's decision to exclude extrinsic evidence he claims was relevant to the victim's credibility or, alternatively, admissible as other act evidence. This claim relates to the trial court's ruling barring evidence of two prior instances where DAR allegedly made false allegations in order to benefit herself. ECF No. 10-5 at 4. Specifically, trial counsel sought to show that DAR had previously made false claims that her mom physically abused her and that a friend was sexually assaulted. Rogers argued that the evidence was admissible as other acts evidence under Section 904.04(2) of the Wisconsin Statutes, as construed by the Wisconsin Supreme Court in *State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W. 2d 30 (1998). The only evidence of the allegedly false allegations offered by the defense, however, was an affidavit of a person who had not

8

been subpoenaed for trial and who had left the state for a vacation. ECF No. 10-13 at 4–8. The trial court properly noted that the affidavit itself was inadmissible hearsay, a ruling trial counsel did not dispute. Instead, trial counsel indicated an intent to inquire into the incidents on cross examination of DAR. *Id.* at 8–9. Noting that the affidavit merely indicated the affiant's opinion that the victim had been untruthful about the incidents, however, the trial court concluded that it was not admissible even as extrinsic evidence under Section 906.08(2). The trial court thus ruled that counsel could inquire into the incidents, but would be bound by the witnesses response. *Id.* at 31–32.

The Wisconsin Court of Appeals affirmed, noting first that Rogers had failed to preserve the issue by failing to include the affidavit in the record on appeal. Citing *Fiumefreddo v. McLean*, 174 Wis.2d 10, 27, 496 N.W.2d 226 (Ct.App.1993), for the proposition that "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling," the court assumed the affidavit failed to show facts relevant to Rogers' claim. This is clearly an adequate and independent state ground for rejecting Rogers' claim under § 2254. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("When reviewing a petition for a writ of habeas corpus, a federal court will not review a question of federal law if the state decision rested on an adequate and independent state ground for dismissal, including a state procedural rule.").

But even assuming the affidavit was in the appellate record and the witness to the statement was available to testify, the court went on to hold that "the evidence would not have been admissible other acts evidence because Rogers failed to show both a permissible purpose and relevance under *Sullivan*." ECF No. 10-6 at 12. The court of appeals held that the proffered evidence was simply too unrelated both substance and indefinite in time to be relevant, and instead constituted extrinsic

9

evidence intended to attack DAR's credibility which is barred by Wis. Stat. § 906.08(2). Finally, even if relevant, the court concluded that the probative value of the evidence would have been outweighed by potential prejudice and confusion. *Id.* at 13. For all of these reasons, the court concluded that the trial court had not improperly exercised its discretion in its evidentiary ruling.

As Respondent points out in his answer to the petition, "'a state trial court's evidentiary rulings . . . are usually beyond the scope of federal habeas review.'" ECF No. 10 at 14–15 (quoting *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004)). While it is possible that a state court's evidentiary rulings could result in a denial of a defendant's Fourteenth Amendment due process right to a fundamentally fair trial, *id.*, Rogers never asserted such a claim in the state court proceedings which constitutes yet another way in which he procedurally defaulted on his right to federal review of the claim. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). Even if he could overcome this default by showing cause and prejudice, which does not exist on this record, Rogers would be unable to show a violation of his right to a fair trial. The basic, routine evidentiary ruling he challenges falls far short of depriving him of a fundamentally fair trial. *See Nevada v. Jackson*, 133 S. Ct. 1990 (2013) (holding petitioner not denied a right to present a complete defense when he was barred from presenting extrinsic evidence of victim's prior accusations of sexual assault). I therefore conclude that this claim fails as well.

## CONCLUSION

For the reasons given above, Rogers' petition for a writ of habeas corpus is **DENIED**. A certificate of appealability will be granted, however, on the issue of whether counsel was ineffective in failing to seek an in camera review of DAR's mental health records. Reasonable jurists could debate whether counsel could have met the initial burden under *Ritchie* to require the trial court to

perform such a review, and thus I conclude Rogers has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

The Clerk is directed to enter judgement denying the petition and dismissing the action. Rogers is advised that a dissatisfied party may appeal this courts's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgement. *See* Fed. R. App. P. 3, 4.

Dated this   2nd   day of August, 2017.

     s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court